# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA

        Plaintiff,

    vs.                              Case No. 1:19-cr-01423 KWR

MOISES ZEPEDA, Jr.,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant's Motion to Suppress Evidence (**Doc. 21**). The Court held an evidentiary hearing on September 10, 2020. Having reviewed the pleadings, evidence, and testimony at the hearing, the Court finds that Defendant's motion is not well taken and, therefore, is **DENIED.**

## BACKGROUND[1]

Defendant was charged with possession with intent to distribute 500 grams and more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), on or about April 28, 2019.

On April 28, 2019, Special Agent ("SA") Jarrell Perry was working drug interdiction at the Greyhound bus terminal in Albuquerque, New Mexico. A bus was scheduled to arrive at 10:00 a.m. and depart at 11:15 a.m. **Doc. 43 at 9.** Passengers were required to de-board the bus while it

---

[1] The Court takes these facts from the evidence admitted at the September 10, 2020 hearing, including the recording (**Ex. 1a**) of the encounter between SA Perry and Defendant and the testimony presented at the hearing. The transcript of the encounter provided by the Government was not admitted into evidence.

was serviced and refueled. **Doc. 43 at 9.** SA Perry boarded the bus before passengers re-boarded and stood at the back of the bus. ***Id.* at 10.**

SA Perry was already speaking to other passengers when he observed Defendant walk down the aisle of the bus with two bags, a duffel bag and Nautica bag. Defendant placed the duffel bag and Nautica bag on the overhead rack across the aisle from his seat. ***Id.* at 18-19.**

After speaking to approximately ten other passengers, SA Perry approached Defendant and asked for consent to speak with him. **Ex. 1a.** Defendant gave SA Perry permission to speak to him. SA Perry told Defendant that was a police officer and there for security. In summary, he asked where Defendant was coming from and where he was going, talked about the weather and football, asked to see his ticket and identification, and asked if he had any luggage with him. Defendant said he only had a black duffel bag with him. SA Perry asked for consent to search the duffel bag for "contraband". Defendant gave consent to search the duffel bag. SA Perry then asked if Defendant had any other luggage, and defendant said no.

SA Perry asked if the Nautica bag was his, and Defendant said it was not. SA Perry asked a series of questions, and touched the Nautica bag, to confirm that the bag did not belong to Defendant. **Doc. 43 at 23-24, 107-08 (**SA Perry testified that when he asks "how about this bag here" he was touching the Nautica bag). Defendant repeatedly denied the bag was his. SA Perry then ended the encounter, took the abandoned Nautica bag off the bus and searched it. He found bundles which he believed contained methamphetamine. After about a minute, he boarded the bus and arrested Defendant. He believed the Nautica bag belonged to Defendant because both he and SA Lemmon observed Defendant carry the bag on the bus.

SA Perry's recorded interaction with Defendant lasted approximately 2 minutes and 50 seconds. *See* **Ex. 1A from 8:20 to 11:10.**

Defendant sought documents from Greyhound pursuant to a Rule 17(c) subpoena prior to holding the suppression hearing.  The Court held an evidentiary hearing on September 9, 2020. Defendant filed final written closing arguments on October 5, 2020.  This matter is now ready for decision.

## DISCUSSION

Defendant seeks to suppress the physical evidence obtained during the alleged consensual encounter[2] because (1) Defendant did not abandon his luggage, (2) the abandonment was otherwise preceded by a Fourth Amendment violation as he was seized in a non-consensual encounter,  and (3) the abandonment was not voluntary.

## I.    Defendant abandoned his Nautica bag and the abandonment was voluntary.

The Fourth Amendment is not implicated when police search property that has been abandoned. See *United States v. Juszczyk*, 844 F.3d 1213, 1213 (10th Cir.2017). "Abandonment occurs if either (1) the owner subjectively intended to relinquish ownership of the property or (2) the owner lacks an objectively reasonable expectation of privacy in the property." *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019), *citing Juszczyk*, 844 F.3d at 1214; *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997). "The owner's abandonment must be voluntary, and abandonment cannot be voluntary when it results from a violation of the Fourth Amendment." *Id.*, *citing United States v. Ojeda-Ramos*, 455 F.3d 1178, 1187 (10th Cir. 2006).

---

[2] "On a motion to suppress, the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion.  The defendant has the burden of showing the Fourth Amendment was implicated, while the government has the burden of proving its warrantless actions were justified."   *United States v. Goebel*, __F.3d __, 2020 WL 2642056, at *2–3 (10th Cir. May 26, 2020) (citations omitted).

"The question, then, is whether a reasonable officer in Agent Perry's position would have believed that [Defendant] had relinquished any property interests she possessed in the suitcase based on [his] voluntary words and actions." *Easley*, 911 F.3d at 1083. Defendant's actions and words clearly and unequivocally indicated to a reasonable officer that he had relinquished any property interest in the Nautica bag.

Defendant argues that SA Perry was not clear about which bag he was referencing. In other words, he says he did not intend to abandon his Nautica bag because he thought SA Perry was asking if *another* bag belonged to him. Defendant's argument short-circuits from the beginning, because SA Perry repeatedly asked whether Defendant had *any* other bag, and Defendant repeatedly said no, indicating that the duffel bag was his only bag. **Doc. 43 at 106.** He asked as follows:

> SA Perry: Any other luggage?
> Defendant: No.
> SA Perry: That's the only one?
> Defendant: Yes.

**Ex. 1a.** Defendant then consented to a search of the duffel bag. The fact that Defendant is now arguing he was confused about which bag SA Perry was referring to simply doesn't make sense based on the record.

Even if Defendant did not clearly indicate he had *no other bag* besides the duffel bag, the Court finds that SA Perry clearly indicated which bag he was referring to – the Nautica bag – and there was no ambiguity whatsoever. The audio recording reflects the following clear, unambiguous questions:

> SA Perry: Is this your bag here?
> Defendant: No
> …
> SA Perry: Sir, does any... Sir, any one of these bags up here belong to you?
> Defendant. No.

SA Perry: Okay. None of 'em is yours?[3]
Defendant: No.
SA Perry: How about this bag here?
Defendant: No.
SA Perry: Do you know who it belongs to?
Defendant: No.
SA Perry: Do you have anything inside of it belongs to you?
Defendant: Nope.
SA Perry: Do you care what happens to it?
Defendant: No.
SA Perry: Do you have any interest in it?
Defendant. Excuse me?
SA Perry: Do you have any interest in it?
Defendant: No
SA Perry: Okay, thank you, sir.

**Ex. 1A**. The Court credits SA Perry's testimony that he not only pointed to but touched the Nautica bag during this exchange. **Doc. 43 at 23-24, 107-08** (SA Perry testified that when he asks "how about this bag here" he was touching the Nautica bag). The Court finds that by touching the bag and asking these detailed and careful questions, there was no ambiguity as to which bag SA Perry was referring. Defendant argues that SA Perry did not touch the Nautica bag and SA Perry omitted that he touched the Nautica bag in his DEA-6 report, but Court still finds SA Perry's testimony more credible. Moreover, the audio recording and SA Perry's testimony show that SA Perry asked a series of detailed questions to ensure that any confusion was dispelled. Although Defendant submits his own testimony that he thought SA Perry was referring to a different bag, the Court finds SA Perry's testimony more credible and consistent with the audio recording.

As explained below, the abandonment was voluntary given the totality of the circumstances.

Therefore, the Court concludes that Defendant subjectively intended to abandon his rights to the Nautica bag, or alternatively, he lacked an objectively reasonable expectation of privacy

---

[3] Although the Court finds the recording difficult to hear as to this question, it appears that SA Perry asked "none of 'em is yours" and Defendant responded "no."

after clearly and unequivocally answering SA Perry's questions and denying any interest in the backpack.

## II.   The Encounter and Abandonment were voluntary and consensual.

Defendant argues that the encounter and the abandonment were involuntary and he was unlawfully seized.   The Court disagrees and concludes that both the encounter and the abandonment were voluntary and consensual.

### A.   Relevant consensual encounter law.

The Fourth Amendment protects citizens from law enforcement's unreasonable seizures. See U.S. Const. amend. IV. An individual has been "seized" for Fourth Amendment purposes when a reasonable person in the individual's position would not feel free to terminate her encounter with the police and leave. *See Halley v. Huckaby*, 902 F.3d 1136, 1145 (10th Cir. 2018). An encounter is not a seizure and does not implicate the Fourth Amendment if it is consensual and voluntary.  Police officers are permitted to ask questions, ask for identification, request consent to search, and ask whether particular luggage belongs to a defendant, without implicating the Fourth Amendment.  *United States v. Easley*, 911 F.3d 1074, 1079 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019).

The Tenth Circuit has "enumerated a non-exhaustive list of factors to be considered in determining whether a reasonable person would feel free to terminate his encounter with the police." *United States v. Hernandez*, 847 F.3d 1257, 1264 (10th Cir. 2017). Those factors are:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Hernandez*, 847 F.3d at 1264 (citing *United States v. Lopez*, 443 F.3d 1280, 1284 (10th Cir. 2006)); *see also United States v. Ojeda-Ramos*, 455 F.3d 1178, 1183 (10th Cir. 2006) (listing similar factors to determine whether a reasonable person would have felt free to terminate the encounter). No single factor is dispositive. The Court considers the totality of the circumstances and from the perspective of an objective, reasonable person. *See Easley*, 911 F.3d at 1079. The focus is on whether a reasonable person would have felt free to terminate the encounter. *Id.*

### B.   The Encounter and Abandonment were consensual and voluntary.[4]

Viewing the totality of the circumstances, the Court finds that a reasonable person in Defendant's position would have felt free to terminate the encounter and refuse consent to search the duffel bag. There were two agents present. However, SA Lemmon was in the front of the bus, did not speak to Defendant, and did not appear to be part of the consensual encounter. SA Lemmon was in plainclothes without his weapon or handcuffs showing, and it is unclear whether a reasonable person would have observed him as an agent. Therefore, there was effectively only one special agent present. SA Perry was in plainclothes with his weapon and handcuffs concealed. **Doc. 43 at 11.** He displayed his badge. There is no evidence of physical touching prior to Defendant's arrest. Moreover, SA Perry used a polite, conversational tone, and neither his language nor tone indicated compliance was compulsory. The types of questions were conversational and he asked about the weather and Defendant's favorite football team. He did not use aggressive language, he addressed Defendant with "sir", was polite, used "thank you." The

---

[4] In the written closing arguments, Defendant focuses on the voluntariness of the encounter and the abandonment of the Nautica bag. Defendant did not independently argue that the consensual search of the duffel bag was coerced. To the extent Defendant does independently contest the consensual search of the duffel bag, the Court finds it was consensual on the same grounds stated in this opinion.

types of questions were not accusatory, threatening, or persistent.  Nothing in SA Perry's language, demeanor, or tone implied that Defendant was required to comply with him.

At no time did SA Perry say he was investigating Defendant for a crime or accuse him of committing a crime.  Although the bus was an enclosed environment, it was a public space with many other passengers in it.  SA Perry talked to approximately ten other passengers and the encounter was within view of these passengers.  *Easley*, 911 F.3d at 1080.  The Court finds that neither SA Perry nor SA Lemmon blocked Defendant's path or blocked his way out of his seat. **Doc. 43 at 19-20, 23** ("When I speak to them, I stand to the rear of their seat because I know they have to be free to leave or movement from, you know, from their seat."  my normal practice, if the bus is pretty full, I stand to the rear of their seat, in the aisleway, and I speak with them.").  Even if SA Perry was blocking Defendant in his seat, the record reflects that SA Perry got out of the way of other passengers boarding the bus.  In other words, a reasonable person would have believed that SA Perry would have gotten out of his way.  Finally, although SA Perry asked to see Defendant's ticket and identification, there is nothing in the record to indicate he physically held on to them. Defendant does not argue that SA Perry held on to his ticket or identification. *See* **Doc. 45.**  The recorded encounter, which included the consensual search of the duffel bag, lasted approximately 2 minutes and fifty seconds.  **Ex. 1a.**  Under these circumstances, the length of this encounter was not coercive.

Finally, the fact that SA Perry did not advise Defendant that he was free to leave is relevant to the inquiry.  However, the clear weight of the other factors and the totality of the circumstances shows that the encounter was consensual and voluntary.  The failure to advise defendant that he was free to leave is not determinative under these circumstances. *United States v. Easley*, 911 F.3d 1074, 1082 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019), *citing United*

*States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir.2006) ("The Supreme Court has admonished ... that an officer's failure to inform the defendant that she is free to leave, standing alone, does not make an encounter nonconsensual.").

For the same reasons, Defendant's abandonment of the Nautica bag was voluntary.  SA Perry asked several questions about whether Defendant owned the Nautica bag or had any interest in it, and each time Defendant was clear that he only had one bag, the duffel bag, and had no interest in the Nautica bag.  "The mere fact that [Defendant] was the subject of police questioning and investigation at the time of abandonment—and may have felt pressure while under police questioning to relinquish the bag—does not of itself render that abandonment involuntary."  *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019).

**C**.      **Defendant's remaining arguments are unavailing.**

Defendant nevertheless argues that the encounter was involuntary or nonconsensual for the following reasons.  The Court addresses each in turn.

1. There was no particularized focus on Defendant, and if there were, it was not coercive.  Defendant argues that SA Perry gave particular focus to him, making the encounter nonconsensual.  Specifically, he argues that he saw SA Perry in the station and SA Perry spent more time questioning him than other passengers.  The Court finds that there was no particularized focus on Defendant beyond the normal, noncoercive questioning allowed in consensual encounters.

Defendant argues that he saw SA Perry multiple times in the bus station – implying that SA Perry was following him or focusing on him.  But the Court finds SA Perry's testimony credible that the first time he saw Defendant was when Defendant boarded the bus and walked down the

aisleway. **Doc. 43 at 13-14**; **50** ("I never saw Mr. Zepeda until he walked down the aisleway of the bus when I was on the bus."). Defendant was carrying a duffel bag and a large black Nautica bag with blue trim. **Doc. 43 at 13-14.** SA Perry did not see Defendant in the bathroom. **Doc. 43 at 50.** To the extent Defendant argues he saw SA Perry at other times, the Court finds does not find those statements credible in light of SA Perry's testimony. Even if Defendant did see SA Perry in the station, there were *no actions by SA Perry* in the station or bathroom that would lead a reasonable person to believe they were being targeted. To the extent he may have seen SA Perry in plainclothes in the station or bathroom, that is not a show of authority that would be coercive.

Rather than being singled out, Defendant was one of many questioned on the bus by SA Perry. He asked other passengers whether they had luggage, and where that luggage was located, and which luggage was theirs. **Ex. 1A.** However, SA Perry asked for consent to search Defendant's duffel bag and asked follow up questions when Defendant denied the Nautica bag was his.

Therefore, the only "particularized focus" at issue are consensual questions. SA Perry asked for permission to speak to Defendant, asked about the weather and football, asked for consent to search his duffel bag, and asked whether the Nautica bag belonged to him. The Court finds that these questions were not coercive, as they were not accusatory, persistent, or threatening.

Defendant asserts that under Tenth Circuit law "particularized focus" by an officer or agent can turn an encounter coercive or involuntary. But the type of "particularized focus" identified in these cases does not include mere consensual questions. Defendant cites to *United States v. Glass*, 128 F.3d 1398, 1407 (10th Cir. 1997), but in that case the Tenth Circuit noted that any particularized focus was *not* coercive where the officers received a tip defendants were transporting drugs, told defendants that they were looking for drugs and, and asked for consent to

search them.  *Id.* ("To the extent these Eighth and Fifth Circuit cases present a per se rule that a person is seized when a police officer's conduct suggests a person is the particular focus of an investigation and the officer asks the subject to consent to a search, we decline to follow them. Although particularized focus is certainly a factor to be considered, the per se rule urged on us here would be inconsistent with our precedent.").  SA Perry's questions were not even as coercive as those asked in *Glass*, as he did not accuse Defendant of possessing drugs.

Defendant also cites to *United States v. Gaines,* 918 F.3d 793, 798 (10th Cir. 2019) for his "particularized focus" argument.  But *Gaines* involved other coercive tactics, in which police officers in two marked cars, with lights flashing, parked behind Defendant's car.  One officer got out of his car and gestured for defendant to get out of his car.  The officer then said there was a report that defendant was "up here selling some dope."  These were signs of authority and express statements that the defendant was being investigated for a crime and not free to leave.  *Id.*

Here, the Court does not find the substance of the encounter or questions coercive.  As explained above, under the totality of the circumstances, the encounter was consensual and not coerced.  SA Perry asked for permission to speak Defendant, asked Defendant questions, talked about the weather and football, asks for permission to search is duffel bag, and asked if the Nautica bag belonged to Defendant.  These types of questions are permitted under Supreme Court and Tenth Circuit law.  *Florida v. Bostick*, 501 U.S. 429, 434-37 (1991) (there is no seizure "when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage); *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018).  He did not ask Defendant threatening, persistent, or accusatory questions.  Absent other indicia of coercion, the Court does not find the type of questions or length of the encounter coercive.  There were no incriminating questions, but even "the mere existence of incriminating

11

questions is not relevant to the existence of a seizure." *See United States v. Little*, 18 F.3d 1499, 1506 (10th Cir. 1994), *quoted in United States v. Gaines,* 918 F.3d 793, 798 (10th Cir. 2019).  In *Glass*, the Tenth Circuit rejected a *per se* rule that asking "directly incriminating and focused questions" transforms a consensual encounter into a seizure. 128 F.3d at 1406-07. Even if there was "particularized focus" on Defendant, it was not the type of focus that would turn the encounter involuntary or nonconsensual.

Defendant argues that SA Perry's encounter with him was much longer than his encounter with other passengers.  The Court notes that the recorded encounter lasted two minutes and fifty seconds, which included time spent conducting a consensual search of Defendant's duffel bag. The Court finds this length of time does not, by itself, turn this consensual encounter coercive.

Defendant believes that he was targeted by SA Perry as part of an ongoing investigation. The Court finds SA Perry's testimony credible that he had not seen Defendant before he boarded the bus, did not have a passenger list, and did not target Defendant.  The DEA-6 report produced by SA Perry several days after the arrest notes that there is a related case.  Defendant believes this shows that SA Perry targeted him before he was arrested.  SA Perry credibly testified that although there was a related case, he did not know about it until after Defendant was arrested and did not target Defendant as part of a prior investigation.  **Doc. 43 at 79-80.**

Defendant attempts to poke holes in SA Perry's reasons for "focusing" on Defendant. But SA Perry's subjective suspicions about Defendant are not the primary focus of the *objective* inquiry of whether a reasonable person would have felt free to leave based on SA Perry's actions and statements.  SA Perry also need not have reasonable suspicion to consensually question Defendant and consensually search Defendant's duffel bag.

Agents can ask questions of individuals without turning the encounter coercive, and an officer can ask whether luggage belongs to a defendant without turning the encounter coercive. As the Supreme Court has explained, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434 (there is no seizure "when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage). Here, SA Perry did not ask any accusatory, threatening, or persistent questions. Therefore, the Court finds that the questions and the length of the encounter were not coercive. Even if there was a particularized focus, the Court finds it was not so coercive, under the totality of the circumstances, to turn the encounter nonconsensual.

2. <u>SA Perry was not coercive in telling Defendant he was a police officer and there for security.</u> Next, Defendant argues that SA Perry was deceptive and coercive in telling him he was a police officer and there for security. The Court disagrees.

Initially, the Court finds that SA Perry was not deceptive in saying he was a police officer there for security. He clarified he was requesting consent to search for contraband. The Court finds that these were not misrepresentations, as SA Perry is part of law enforcement agency, there for security, and searching for contraband.

To the extent it was a misrepresentation, it is not the type of misrepresentation "that would create a coercive environment." *United States v. Easley*, 911 F.3d 1074, 1081 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019) (rejecting argument that SA Perry deceived or coerced defendant by representing he was there for security). Defendant cites *United States v. Harrison*, 639 F.3d 1273, 1278-79 (10th Cir. 2012), in which officers told a defendant there was a bomb threat. However, telling a defendant there's a bomb threat and likelihood of physical harm is an entirely different kind and degree of deception. While officers may employ deceit or trickery,

13

it crosses a line where it implies "an individual has no ability to refuse consent." *Id.* The Court finds that any deceit or trickery here did not imply that Defendant had no ability to refuse consent. As stated above, a long line of cases provide that a police officer or agent can consensually talk to an individual, ask questions, ask for consent to search luggage, and ask if luggage belongs to them.

Defendant argues he thought he could not end the encounter because SA Perry said he was a police officer, and Defendant suggests he thought he was being seized to investigate a robbery or theft. However, there is nothing in the record to suggest that SA Perry conveyed that to him. Again, Defendant's subjective beliefs are not controlling. *See California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ("Mendenhall establishes that the test for existence of a 'show of authority' [for seizure purposes] is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."), *cited in United States v. Easley*, 911 F.3d 1074, 1081–82 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019). These subjective beliefs, which were not made known to SA Perry, are irrelevant to this objective inquiry. *See United States v. Hill*, 199 F.3d 1143, 1149 (10th Cir. 1999) ("the particular personal traits or subjective state of mind of the defendant are irrelevant to the objective 'reasonable person' test set out in *Bostick,* 'other than to the extent that they may have been known to the officer and influenced his conduct.' ") (citation omitted). SA Perry noted that Defendant seemed scared, **Doc. 43 at 85,** but he did not see any objective indication that Defendant was expressing a desire to end the conversation.

The Supreme Court is clear that police officers may approach an individual, ask questions, ask for identification, and ask for consent to search luggage, even when they are identifiable as police officers. *Fla. v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991)

("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business…the encounter is consensual and no reasonable suspicion is required.") (internal quotation marks and citation omitted).

Defendant argues that he believed SA Perry was the equivalent of a TSA agent when he said he was a police officer, and therefore he could not refuse consent to search.  This argument is odd, because a TSA agent is not a law enforcement officer or police officer.  Moreover, this argument was not developed at the hearing, and there is nothing in the record comparing SA Perry's practices to the practices used at a TSA checkpoint. Again, Defendant's subjective beliefs do not control here, as SA Perry gave no indication that speaking to him or consenting to a search was required.  SA Perry asked for permission to speak to Defendant and asked for consent to search his duffel bag, and did not indicate that either was required.

In contrast, there are objective indications at a TSA checkpoint that the encounter is not consensual and a search is required.  There are physical signs indicating as much.  Moreover, you are required to put your items through an x-ray machine, you are notified your bags may be handsearched, and you a forced to go through a metal detector (or other similar device).  In contrast, absent objective indicia of coercion, a reasonable person would not believe that they are required to consent to a search by a police officer.

        3.    <u>SA Perry did not delay the bus</u>.  Defendant argues that the Government failed to prove that SA Perry did not delay the bus and thereby seize all passengers on the bus.  Defendant asks the Court to find as a fact that SA Perry delayed the bus.  However, any such finding would be unsupported in the record.  Rather, SA Perry credibly testified he did not delay the bus.  **Doc. 43 at 98-99.**

SA Perry testified that he gets on board the bus before passengers board and begins talking to them as they come on board.  SA Perry testified he first observed Defendant when he was in the bus speaking to other passengers, and he observed Defendant walk down the aisle of the bus.  The recording of his interactions with bus passengers lasted approximately 11 minutes before he took possession of the abandoned Nautica bag.  **Doc. 43 at 120.**   There is nothing in the record to suggest that all passengers had boarded or that the bus was ready to depart.

Rather, SA Perry credibly testified that the bus was not ready to depart.  He also testified that when he got off the bus, the driver wasn't out or ready to go.  **Doc. 43 at 98.**  "That's how I can judge when the bus is ready to leave. When the driver takes all the tickets, he comes out and he's ready to board the bus to leave. It didn't happen in this case." *Id*.   "I know we didn't hold the bus, he wasn't out waiting for us." *Id.* **at 99.**

The Court finds SA Perry's testimony that he did not delay the bus credible and concludes there is no evidence that SA Perry delayed the bus.

4.      <u>Defendant did not convey to SA Perry that he did not want to speak to him</u>.

Defendant also argues that he did not want to speak to SA Perry.  SA Perry testified that he asked Defendant whether he spoke English because Defendant looked straight-ahead and was not looking at SA Perry.  **Doc. 43 at 81, 84**.

"When a citizen expresses his or her desire not to cooperate, continued questioning cannot be deemed consensual." *Donahue v. Wihongi*, 948 F.3d 1177, 1195 (10th Cir. 2020) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1253 (9th Cir. 1993)).  Here, Defendant did not express a desire to end the encounter or not cooperate.

The Court agrees with SA Perry that Defendant was likely nervous and did not give any objective indication that he desired to cease the interaction. **Doc. 43 at 84.**  Defendant did not

refuse to answer any questions or remain silent.  Based on the audio recording, the Court finds his responses to SA Perry's questions wear clear and quick, and the Court did not find hesitation in Defendant's voice or delay in his response that would indicate he was ceasing the conversation. There were no objective indications to a reasonable officer that Defendant was ending the encounter.

Defendant argues that he felt forced to participate in the encounter because of the nature of SA Perry's questioning, citing *United States v. Little*, 60 F.3d 708, 712 (10th Cir. 1995).  As explained above, the Court finds that SA Perry's questions were not accusatory, persistent, or intrusive.

## CONCLUSION

A reasonable person in Defendant's position would have felt free to terminate his encounter with SA Perry.  Therefore, the encounter was consensual and Defendant was not unlawfully seized. Moreover, Defendant's abandonment of the Nautica bag was clear, unequivocal, voluntary and not coerced.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Suppress Tangible Evidence (**Doc. 21**) is hereby **DENIED**.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE